## THE CHARLES G. ENDICOTT.

### THE MONTSERRAT.

#### (District Court, S. D. New York. April 16, 1908.)

COLLISION—STEAM AND SAILING VESSELS—FAULTS OF STEAMER.

A collision occurred in the daytime in lower New York Bay between a steamship and a schooner, both proceeding to sea. The steamer was in the main ship channel, making a speed of about 13 miles an hour, without a lookout, while the schooner was crossing the channel on a course E. S. E. at a speed of about 3 knots. *Held*, that the steamer was solely in fault for not avoiding the schooner and proceeding full speed into collision; it appearing that the latter kept her course and speed until immediately before the collision, when she turned to starboard, thereby lessening the injury to some extent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, §§ 182–186.]

In Admiralty. Cross-suits for collision.

Hunt, Hill & Betts, for the Montserrat.

Alexander & Ash, for Bailey.

ADAMS, District Judge. These actions, the Compania Trasatlantica against the schooner Charles G. Endicott and Marvin H. Bailey against the steamship Montserrat, arose out of a collision which took place between those vessels in the lower bay of New York, about 3 p. m. on the 5th of January, 1906. Both vessels were bound to sea, the Montserrat from New York and the Endicott from an anchorage in the bay, where she had been lying awaiting a favorable wind, which came on in the afternoon. The steamer was proceeding down the main ship channel and the schooner was attempting to cross the channel when the vessels came together, the jib boom of the schooner catching in the steamer's starboard rigging. Both vessels were somewhat damaged.

The steamer's contention is that while she was proceeding down the channel at the rate of about 13 miles per hour, about 3:15 p. m., and was substantially half way down the West Bank, she observed the schooner some 3 miles ahead on the starboard side and to the westward of the channel, with only her fore staysail and jib set, headed about the same as the steamer. The schooner then appeared to be getting under way, or, in any event, was not making much headway, but was so far to the starboard of the steamer's course, that the lat-

ter saw no reason to change it and if both vessels had continued as they were headed they would have cleared by several ships' lengths, but the schooner suddenly fell off before the wind and ran into the steamer. This happened in the vicinity of buoy No. 7, about a mile and a half below the West Bank Light. The steamer was about 400 feet long.

The schooner's claim is that she was taken in tow at Perth Amboy, light, bound for Newport News, Virginia, and went through the dredged channel, leading into the bay, to a point near its mouth, where she made sail and proceeded toward Sandy Hook. The wind being light from the southwest, which would be a head wind down the New Jersey beach, the master determined to wait until it was more favorable and brought his vessel to anchor about a mile and a half southeast of Old Orchard Shoal Light. Some time between 2:30 and 3 o'clock p. m. after the wind had shifted to west northwest, the schooner was gotten under way again with the head sails stated on a course of east southeast to the bell buoy off Sandy Hook, on which she continued until just before the collision. The steamer's approach was seen and for that reason the schooner did not make any change in her sails, expecting the steamer to change and pass under the schooner's stern, but instead of doing so, the steamer, when the vessels were in close proximity, sheered to port. The schooner put her wheel hard astarboard, with the effect of swinging her about a point to the starboard, making her heading at time of collision about southeast by east. The schooner was 172 feet long, with three masts.

The steamer charged the schooner with fault in that (1) she was not under the command of a competent master and was not properly manned and equipped, (2) she did not keep a good lookout, (3) she did not keep her course, (4) she undertook to cross the bows of a steamer of great draught, proceeding in a narrow channel and where she could not manœuvre and (5) she did not manage her helm, so as to avoid the collision, and keep parallel with the steamer. The schooner charged the steamer with fault in that (1) she was not in command of a competent master, attentive to duty, (2) she did not maintain a proper lookout, (3) she sheered to port and attempted the dangerous manœuvre of running across the bows of the schooner, (4) she did not sheer to starboard and pass astern of the schooner, (5) she attempted to shave too close to the schooner, (6) she was on the port side of a narrow channel, (7) she did not keep clear of the schooner (8) she did not reduce her speed and stop and back and (9) she was running at too high a rate of speed.

The steamer had no lookout and her testimony that she saw the schooner sail from a point some distance out of the channel, but in the same general direction with the steamer, and then suddenly change across the channel and into the steamer is not very credible and the weight to be given to the account is greatly affected by the very unsatisfactory statements made by her witnesses with respect to the location of the schooner and what she did. The contention that she moved from a position several hundred feet to the westward of the channel to a point on the eastern side, a distance altogether of from 975 to 1,900 feet, as variously stated, is too extraordinary for belief.

No one contends that the schooner had more than her two head sails set and even with a fair wind it was practically impossible for her to sail much in excess of the estimate of the rate given by her, which was 3 knots. At this speed she could only have sailed across the channel, about 900 feet in 3 minutes, and the distance to the westward of the channel would have increased the time considerably, depending upon how far it was. Very little satisfaction is obtainable from the steamer's testimony and it is not seen how the collision could have occurred from her accounts.

The schooner's testimony sustains the account given above and it is stated that she sailed from her anchorage on a steady course until the vicinity of the steamer was reached and it was seen from the latter's movements that it would be necessary for the schooner to take some measures to avoid a dangerous collision, and she turned somewhat, about a point, to the starboard and thus reduced the damages. The master expected the steamer as the vessels approached to turn to the starboard and pass under the schooner's stern instead of which she turned to the port across her bow. In pursuing her course, the schooner was never up as far as buoy No. 7, but, following a straight course, she crossed the channel about a mile to the southward of that buoy. She was not struck by a flurry of wind which caused her to pay off toward the steamer, as stated by the latter's witnesses, and no change was made in her course until in the extremity of the collision, when she changed about a point as above stated.

It seems to be perfectly clear that the collision was due to the faults of the steamer in not seeing and avoiding the schooner and in proceeding at full speed into the collision.

The libel on the part of the steamer will be dismissed. The schooner's libel will be sustained, with an order of reference.